630 So.2d 172 (1993)
STATE of Florida, Petitioner,
v.
Michelle L. HICKSON, Respondent.
No. 79222.
Supreme Court of Florida.
October 21, 1993.
Rehearing Denied January 5, 1994.
*173 Robert A. Butterworth, Atty. Gen., James W. Rogers, Bureau Chief, Criminal Appeals, Asst. Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for petitioner.
Thomas G. Fallis of Elia & Fallis, P.A., Jacksonville, for respondent.
James T. Miller, Jacksonville, amicus curiae for Florida Ass'n of Criminal Defense.

CORRECTED OPINION
McDONALD, Justice.
In Hickson v. State, 589 So.2d 1366, 1369-70 (Fla. 1st DCA 1991), the district court certified the following question as being of great public importance:
Is the defendant's constitutional privilege against testimonial examination waived when a defense psychologist testifies "about the circumstances giving rise to the alleged battered-spouse syndrome" based in part on the defendant's statements to such witness which have been fully disclosed to the prosecution before trial.
We have jurisdiction, article V, section 3(b)(4), Florida Constitution. After studying this issue, we restate the question as follows:
What can an expert testify to when a defendant relies on battered-spouse syndrome evidence to support a claim of self-defense?
We answer the restated question by holding that an expert can generally describe the syndrome and the characteristics of a person suffering from the syndrome and can express an opinion in response to hypothetical questions predicated on facts in evidence, but cannot give an opinion based on an interview of the defendant as to the applicability of the syndrome to that defendant unless notice of reliance on such testimony is given and the state has the opportunity to have its expert examine the defendant. We quash the opinion under review.
Hickson and the victim lived together for several months and married on July 1, 1990. Four days later she stabbed him to death, and the state charged her with second-degree murder. She informed the state that her defense would be self-defense, based on the battered-spouse syndrome, and that she would offer the testimony of Dr. Harry Krop, a psychologist who had examined her, to support that defense. The state deposed Krop and learned of his conclusion that Hickson suffered from the battered-spouse syndrome when she killed her husband. Thereafter, the state filed a motion to compel Hickson to submit to an examination by its expert so that it could develop evidence to rebut Krop's testimony. The trial court found that such an examination would not violate Hickson's rights against self-incrimination because the state could use any information gained through the examination only in rebuttal, not in its case in chief, and granted the motion to compel.
Hickson petitioned the district court for a writ of prohibition, asking that the trial court be directed to rescind its order. The district court treated the petition as one for writ of certiorari and granted the writ. The trial court relied on Henry v. State, 574 So.2d 66, 70 (Fla. 1991), where we stated that when "a defendant seeks to pursue an insanity defense, the state should have an equal opportunity to obtain evidence relevant to that issue." The district court, however, distinguished Henry and held that "denial of the motion to compel would not preclude or prejudice the prosecution's use of its psychiatric testimony as to the viability of appellant's asserted defense based on her disclosed statements to Dr. Krop." 589 So.2d at 1369. After certifying its question, the court concluded that the trial court should not have ordered that Hickson be compelled to submit to a state-sponsored examination.
Before this Court the state argued that allowing Hickson to testify through Krop's testimony would unduly prejudice the state and that the only way to level the playing field would be to require that Hickson be examined by a state expert. Hickson, on the other hand, again argued that her being examined by a state expert would violate her right not to incriminate herself. The Florida Association of Criminal Defense Lawyers argued on Hickson's behalf that the district court's decision should be approved, that overturning that decision would amount to an amendment to the rules of criminal procedure, *174 and that the state could rebut the proposed defense testimony without a compelled examination of Hickson. After oral argument, we directed the parties to submit supplemental briefs comparing State v. Hennum, 441 N.W.2d 793 (Minn. 1989), with State v. Briand, 130 N.H. 650, 547 A.2d 235 (1988).
All fifty states have statutes making spousal abuse a crime. Rick Brown, Note, Limitations on Expert Testimony on the Battered Woman Syndrome in Homicide Cases: The Return of the Ultimate Issue Rule, 32 Ariz. L.Rev. 665 (1990). Courts in more than thirty states[1] have addressed the admissibility through expert testimony of evidence of the battered-spouse syndrome, with all but two[2] deciding that such evidence is admissible.[3] Most cases that have found expert testimony on battered-spouse syndrome evidence admissible have used the test derived from Dyas v. United States, 376 A.2d 827 (D.C.), cert. denied, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977), i.e., whether "(1) the expert is qualified to give an opinion on the subject matter; (2) the state of the art or scientific knowledge permits a reasonable opinion to be given by the expert; and (3) the subject matter of the expert opinion is so related to some science, profession, business, or occupation as to be beyond the understanding of the average layman."[4]Hawthorne v. State, 408 So.2d 801, 805 (Fla. 1st DCA), review denied, 415 So.2d 1361 (Fla. 1982), and cases cited therein. The New Jersey Supreme Court, for instance, found an expert's testimony on the subject "essential to rebut the general misconceptions regarding battered women" because such testimony
is aimed at an area where the purported common knowledge of the jury may be very much mistaken, an area where jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion, an area where expert knowledge would enable the jurors to disregard their prior conclusions as being common myths rather than common knowledge.
State v. Kelly, 97 N.J. 178, 478 A.2d 364, 378 (1984); State v. Koss, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990).
This Court has never considered the admissibility of expert testimony on the battered-spouse syndrome. Several district courts of appeal have, however, and they, like the New Jersey and Ohio courts, have concluded that such testimony is admissible: "It is precisely because a jury would not understand why appellant would remain in the environment that the expert testimony would have aided them in evaluating the case." Hawthorne, 408 So.2d at 807; see also Rogers v. State, 616 So.2d 1098 (Fla. 1st DCA 1993); Terry v. State, 467 So.2d 761 (Fla. 4th DCA), review denied, 476 So.2d 675 (Fla. 1985); Borders v. State, 433 So.2d 1325 (Fla. 3d DCA 1983). In Hawthorne v. State, 470 So.2d 770, 774 (Fla. 1st DCA 1985) the district court held that the trial court did not abuse its discretion in determining "the qualifications of the expert and whether the subject can support an expert's opinion." Since this second Hawthorne opinion, the battered-spouse *175 syndrome "has gained substantial scientific acceptance to warrant admissibility." Koss, 551 N.E.2d at 974. Indeed, in Rogers the district court stated:
Because the scientific principles underlying expert testimony relative to the battered woman's syndrome are now firmly established and widely accepted in the psychological community, we conclude that the syndrome has now gained general acceptance in the relevant scientific community as a matter of law.

616 So.2d at 1100 (emphasis in original). We agree and approve Rogers on this point.[5] Therefore, we hold that the battered-spouse syndrome meets the second and third parts of the Dyas test and that expert testimony on it is admissible.[6]
Although many courts have considered the admissibility of expert testimony about the battered-spouse syndrome, few have confronted the situation presented in the instant case. Even some courts that have held that experts can testify to the ultimate fact that a defendant suffers from the syndrome have not addressed whether a defendant must submit to an adverse examination. E.g., People v. Aris, 215 Cal. App.3d 1178, 264 Cal. Rptr. 167 (1989), review denied (Mar. 1, 1990); Smith v. State, 247 Ga. 612, 277 S.E.2d 678 (1981); Commonwealth v. Craig, 783 S.W.2d 387 (Ky. 1990); State v. Wilkins, 305 S.C. 272, 407 S.E.2d 670 (Ct.App.), cert. denied (Nov. 21, 1991); State v. Allery, 101 Wash.2d 591, 682 P.2d 312 (1984). In fact, our research has disclosed only five cases directly on point with the instant case, two of which are Briand and Hennum.
In Briand the New Hampshire Supreme Court held "that a criminal defendant [who raises the battered-spouse syndrome in support of a claim of self-defense] waives her right to resist the State's request that she submit to court-ordered psychiatric examination when she (1) submits to psychiatric examination by defense experts; and (2) evinces the intention to rely on that testimony at trial." 547 A.2d at 240. Two other state courts have followed Briand. State v. Hess, 252 Mont. 205, 828 P.2d 382 (1992); State v. Myers, 239 N.J. Super. 158, 570 A.2d 1260 (Ct.App.Div.), certification denied, 127 N.J. 323, 604 A.2d 598 (1990). The Supreme Court of Minnesota, on the other hand, held in Hennum that
expert testimony regarding battered woman syndrome will be limited to a description of the general syndrome and the characteristics which are present in an individual suffering from the syndrome. The expert should not be allowed to testify as to the ultimate fact that the particular defendant actually suffers from battered woman syndrome. This determination must be left to the trier of fact... . This restriction will remove the need for a compelled adverse medical examination of the defendant. Since the expert will only be allowed to testify as to the general nature of battered woman syndrome, neither side need conduct an examination of the defendant.
441 N.W.2d at 799. A Michigan court reached the same result as Hennum in People v. Wilson, 194 Mich. App. 599, 487 N.W.2d 822 (1992).[7]
After studying this matter and the alternative choices available, we find that both Hennum and Briand have merit. Therefore, we hold that the Hennum approach, expanded to include the right to ask hypothetical questions of the experts, protects the rights and interests of both the *176 defendant and the state. Allowing the defense to present expert testimony on the syndrome and the characteristics of a battered spouse will give the jurors and the judge information beyond the understanding of the average layman. Allowing hypothetical questions about a hypothetical person predicated on facts in evidence will assist the jury in determining whether or not the defendant was justified in or excused from her alleged felonious conduct because of the battered-spouse syndrome.[8]
If a defendant decides that she wants to rely on her expert's relating the battered-spouse syndrome to the facts of her case, however, we agree with Briand that she waives her right to refuse to submit to an examination by the state's expert. A defendant who takes the stand waives the privilege against compelled self-incrimination. If a defendant were able to rely on her statements being presented to a trier of fact through an expert's testimony, she would, in effect, be able to testify without taking the stand and subjecting herself to the state's questions. Allowing the state's expert to examine a defendant will keep the state from being unduly prejudiced because a defendant will not be able to rely on expert testimony that the state has no effective means of rebutting.[9] We agree with the trial court's ruling that the reasoning of Henry is applicable here and disagree with the district court's conclusion to the contrary.
Therefore, if a defendant decides to use the battered-spouse syndrome to support a claim of self-defense, written notice to that effect must be communicated to the state similar to the procedure set out in Florida Rule of Criminal Procedure 3.216(c).[10] When a defense expert will be used to demonstrate the presence of the syndrome, the state will then have the opportunity to have the defendant examined by its expert, who will be allowed to testify at trial to rebut a defense expert's testimony. This presents a defendant with the choice of either 1) having her expert testify directly about her case, in which instance the state may have her examined by its expert, or 2) both sides may present the testimony of experts who have not examined the defendant and who will not testify about the facts of her case.
In conclusion, therefore, we answer the rephrased question as set out above and quash the decision of the district court of appeal. That court is directed to affirm the trial court's ruling and to remand this cause for further action consistent with this opinion. If Hickson decides to rely on the battered-spouse syndrome, and wishes to present the testimony of an expert who has examined her, she must submit to an examination by the state's expert, whose testimony may be used to rebut her expert's testimony. On the other hand, if she chooses to have an expert, who has not examined her, testify only about the syndrome in general or to *177 answer only hypothetical questions, the state will not be allowed to have Hickson examined by its expert, but may, if it chooses, present its own expert to testify as to generalities and hypotheticals.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] A 1990 law review article, Sarah C. Madison, Comment, A Critique and Proposed Solution to the Adverse Examination Problem Raised by Battered Woman Syndrome Testimony in State v. Hennum, 74 Minn.L.Rev. 1023, 1034-35, nn. 47, 48, & 50 (1990), lists the jurisdictions, and cases from them, that had considered battered-spouse syndrome evidence. Since that comment was written, several more states have done so: People v. Wilson, 194 Mich. App. 599, 487 N.W.2d 822 (1992); State v. Hess, 252 Mont. 205, 828 P.2d 382 (1992); State v. Wilkins, 305 S.C. 272, 407 S.E.2d 670 (Ct.App.), cert. denied (Nov. 21, 1991); see also Ex parte Haney, 603 So.2d 412 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).
[2] Louisiana in State v. Necaise, 466 So.2d 660 (La. Ct. App. 1985), and Wyoming in Buhrle v. State, 627 P.2d 1374 (Wyo. 1981), have held that evidence of the battered-spouse syndrome is inadmissible. Ohio held likewise in State v. Thomas, 66 Ohio St.2d 518, 423 N.E.2d 137 (1981), but overruled Thomas on that issue in State v. Koss, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990).
[3] See cases collected in Madison, supra note 1, at 1035 n. 48.
[4] The second part of this test encompasses the test for admissibility of expert testimony from Frye v. United States, 293 F. 1013 (D.C. Cir.1923), which we recently relied on in Flanagan v. State, 625 So.2d 827 (Fla. 1993). See Rick Brown, Note, Limitations on Expert Testimony on the Battered Woman Syndrome in Homicide Cases: The Return of the Ultimate Issue Rule, 32 Ariz. L.Rev. 665, 670-75 (1990).
[5] Although we approve the holding in Rogers v. State, 616 So.2d 1098 (Fla. 1st DCA 1993), that battered-spouse syndrome evidence is admissible, we disapprove its holding that Rogers' mental health expert could testify on the applicability of the syndrome to her case because the procedure set out later in this opinion was not followed. If Rogers has not been retried by the time this opinion is released, the state must be afforded the opportunity to have its expert examine Rogers if she wants her expert to testify as to the syndrome's applicability to her.
[6] The first part of the test must still be met.
[7] In People v. Wilson, 194 Mich. App. 599, 487 N.W.2d 822, 825 (1992), the court stated that "the [battered-spouse syndrome] expert is an expert with regard to the syndrome and not the particular defendant. Thus, the expert is qualified only to render an opinion regarding the `syndrome' and the symptoms that manifest it, not whether the individual defendant suffers from the syndrome or acted pursuant to it."
[8] The state, of course, can present similar evidence.
[9] Expert testimony generally has an "aura of special reliability and trustworthiness," United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir.1973), that is almost impossible to rebut unless the opposing side is able to produce contrary evidence of the same quality.
[10] We recognize that this opinion requires some procedural rules which should be incorporated into the Florida Rules of Criminal Procedure. We request the Criminal Rules Committee of The Florida Bar to submit a permanent rule consistent with this opinion. Until this is done, and on a temporary emergency basis, we adopt the procedures and time constraints set forth in Florida Rule of Criminal Procedure 3.216(b) and (c) for the defense of battered-spouse syndrome. Pursuant to Florida Rule of Judicial Administration 2.130 the Court will reconsider any appropriate changes to the emergency rule sixty days after the filing of this opinion.

Therefore, emergency rule 3.201 is adopted to read as follows:
(a) Battered-Spouse Syndrome. When in any criminal case it shall be the intention of the defendant to rely on the defense of battered-spouse syndrome at trial, no evidence offered by the defendant for the purpose of establishing that defense shall be admitted in the case unless advance notice in writing of the defense shall have been given by the defendant as hereinafter provided.
(b) Time for Filing Notice. The defendant shall give notice of intent to rely on the defense of battered-spouse syndrome no later than 30 days prior to trial. The notice shall contain a statement of particulars showing the nature of the defense the defendant expects to prove and the names and addresses of the witnesses by whom the defendant expects to show battered-spouse syndrome, insofar as possible.