773 So.2d 618 (2000)
STATE of Florida, Petitioner,
v.
Thomas MIZELL, Respondent.
No. 1D00-513.
District Court of Appeal of Florida, First District.
December 12, 2000.
*619 Robert A. Butterworth, Attorney General, and Edward C. Hill, Assistant Attorney General, Tallahassee, for Petitioner.
Nancy A. Daniels, Public Defender, and Brian Morrissey, Assistant Public Defender, Fernandina Beach, for Respondent.
KAHN, J.
By petition for writ of certiorari, the State of Florida seeks review of a pretrial order in a criminal case. In the order under review, the trial court allowed, "under certain limited conditions," evidence of respondent Thomas Mizell's post traumatic stress disorder (PTSD). Mizell is charged in circuit court with attempted second degree murder. Because the trial court did not depart from the essential requirements of law, we deny the petition.
Mizell served in Vietnam in 1971. He reported that in Vietnam his primary job involved repairing machine guns and checking tankers and bunkers for explosives. Mizell also reported experiencing several disturbing incidents while he was in Vietnam. As a result of these incidents, Mizell has been treated for instability by the Veteran's Administration since approximately 1991, and he was diagnosed with PTSD in 1993.
On the day of the incident, September 20, 1998, Mizell and several others were gathered at Frank Wilder's house. Mizell drank eight or nine beers before the victim, Benny Hayes, arrived. Hayes was also drinking, and he and Mizell argued. Mizell claims that Hayes used derogatory terms and made threats to Mizell. To avoid Hayes, Mizell left and returned to his house, which was very near Wilder's house. Mizell returned to Wilder's house twice at Wilder's request. Each time, Mizell left once Hayes reappeared. After his third trip home from Wilder's house, Mizell fell asleep on a couch with the front door open. Mizell awoke to find Hayes standing over the couch saying, "You son-of-a-bitch, I'm going to cut your throat." As he spoke, Hayes ran his hand over his pocket. Mizell reacted by rolling over and hitting Hayes. Hayes then placed a hand into his pocket. Seeing this, Mizell picked up a stick and hit Hayes. Mizell claims he *620 then went blank, and the next thing he remembers is seeing Hayes very bloody. The arrest report indicates that Mizell hit Hayes several times. Hayes was rendered unconscious by the attack, and he also lost several teeth. These events resulted in the pending criminal charge.
Defense counsel proposed to offer expert trial testimony from Dr. Harry Krop, a licensed clinical psychologist. Dr. Krop would testify that Mizell has been diagnosed with PTSD, and he would explain what PTSD is and how PTSD affects an individual's perceptions. The State objected to the prospect of such expert testimony and filed a motion in limine to prevent its admission. The trial court denied the motion, outlining very specific conditions under which the defense would be able to offer the PTSD evidence:
1. The Defendant must lay a predicate by testifying,
2. Thereafter, Dr. Krop may testify as to the Post Traumatic Stress Disorder.
3. Dr. Krop may reveal the Defendant's alleged background but may not vouch for it.
4. Dr. Krop may not refer to the Battered Wife's Syndrome.
5. Dr. Krop may not offer an opinion as to the validity of self-defense in this case.
The State now seeks a writ of certiorari to quash the order of the trial court. We have jurisdiction. See State v. Pettis, 520 So.2d 250, 253 (Fla.1988).
The State advances two arguments in support of its petition.[*] First, the State urges that Mizell improperly seeks to adduce diminished capacity evidence negating any requisite criminal intent. Second, the State argues that, even if the PTSD evidence is not diminished capacity evidence, it is inadmissible because it is irrelevant on the question of self-defense. We reject each of these arguments.
The State correctly notes that Florida law rejects diminished capacity evidence. See Chestnut v. State, 538 So.2d 820, 825 (Fla.1989) (holding that evidence of an impaired mental condition, that does not rise to Florida's definition of insanity, is not admissible to show that the defendant could not have formed the intent necessary to commit the crime). The State is incorrect, however, in its characterization of PTSD as diminished capacity evidence in this case. We view the PTSD evidence offered in this case as state-of-mind evidence, quite analogous to battered spouse syndrome (BSS) testimony that has in fact been approved many times. BSS testimony has been admitted to support a claim of self-defense. See State v. Hickson, 630 So.2d 172, 173 (Fla.1993) (holding that "an expert can generally describe [BSS] and the characteristics of a person suffering from the syndrome and can express an opinion in response to hypothetical questions predicated on facts in evidence...."). PTSD evidence, as offered in this case, is not inadmissible as diminished capacity evidence.
*621 As to the State's second argument, we hold that PTSD evidence is relevant on the question of self-defense. The standard jury instruction for self-defense, which the trial judge quoted during the hearing, indicates that a defendant's perceptions are relevant when assessing applicability of self-defense. See Fla. Std. Jury Instr. (Crim.) 45, 48 ("Based upon appearances, the defendant must have actually believed that the danger was real."). The cases that admit evidence of BSS do so to help the jury understand why the victim would subjectively fear increased aggression against her. See Hawthorne v. State, 408 So.2d 801, 806-07 (Fla. 1st DCA 1982) ("The expert testimony would have been in order to aid the jury in interpreting the surrounding circumstances as they affected the reasonableness of her belief ... that because she suffered from the syndrome, it was reasonable for her to have remained in the home and at the pertinent time, to have believed that her life and the lives of her children were in imminent danger.").
The State advances the case of State v. Nazario, 726 So.2d 349 (Fla. 3d DCA 1999), as a factually similar case supporting the proposition that PTSD evidence is inadmissible on the question of self-defense. In Nazario, the defendant wished to proffer an expert to testify that due to the physiological effects of the "fight/flee syndrome," the defendant was unable to form the intent necessary to commit second degree murder. See id. at 350. The expert would have also testified that this syndrome rendered the killing involuntary. See id. According to the Third District, this was a theory of self-defense. See id. at 349 ("Nazario's theory of defense in this case is apparently that of self-defense."). The court then held that such evidence was inadmissible as offered, citing Chestnut. See id. at 350. The Nazario court may, however, have mischaracterized the defendant's theory as self-defense when it was really a diminished capacity defense. This suggestion is evidenced by the court's citation to Chestnut. We do not find Nazario analogous to the present case. Mizell has never contended that his acts were involuntary or that he could not form the requisite intent to commit the crime charged. Mizell's expert even testified that PTSD does not render a person's actions involuntary.
In this case, the trial court laid down five very specific conditions on the admissibility of PTSD evidence. These conditions were designed to avoid the problems that have arisen in other cases. Specifically, the court's order will prevent a trial scenario in which a psychologist may skillfully present the defendant's testimony by the backdoor, negating the State's right to cross-examination. The order will also not allow the psychologist's testimony to improperly bolster and/or vouch for the defendant's version of events.
For the foregoing reasons, the petition is DENIED.
ERVIN AND MINER, JJ., concur.
NOTES
[*] Although the State also makes an argument based on Frye v. United States, 293 F. 1013 (D.C.Cir.1923), such was not raised before the trial court. The trial court specifically ruled that PTSD evidence meets the Frye standard, and the State stood mute when the trial judge suggested that PTSD is "universally accepted." We, therefore, do not here address the Frye argument. See Hadden v. State, 690 So.2d 573, 580. ("[I]t is only upon proper objection that the novel scientific evidence offered is unreliable that a trial court must make this determination. Unless the party against whom the evidence is being offered makes this specific objection, the trial court will not have committed error in admitting the evidence."); see also Terry v. State, 668 So.2d 954, 961 (Fla.1996) (finding that "in order for an argument to be cognizable on appeal, it must be the specific contention asserted as the legal ground for objection, exception, or motion below."); Tillman v. State, 471 So.2d 32, 35 (Fla.1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.").